1

2

3

4

5

6
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

7

PAULA M. B.,

8                                    Plaintiff,        Case No. C23-5885 RSM

9           v.                                         **ORDER REVERSING DENIAL OF**
                                                       **BENEFITS AND REMANDING**
10    COMMISSIONER OF SOCIAL SECURITY,                 **FOR AN AWARD OF BENEFITS**

11                                   Defendant.

12

13          Plaintiff seeks review of the denial of her application for Disability Insurance Benefits

14  (DIB).  Plaintiff contends the ALJ erred by rejecting medical opinion evidence and her symptom

15  testimony.[1]  Dkt. 11.  As discussed below, the Court **REVERSES** the Commissioner's final

16  decision and **REMANDS** the matter for an award of benefits.

17                                        **BACKGROUND**

18          This is the third time Plaintiff seeks review of her application for benefits.  In June 2016,

19  Plaintiff applied for DIB, alleging an onset date of January 1, 2010.  Admin. Record (AR) 92,

20  199–200.  Plaintiff later amended her onset date to December 1, 2014.  AR 47, 907.  In October

21

22  [1] Plaintiff's Opening Brief does not entirely comply with the briefing requirements provided in the Court's
    Scheduling Order, as Plaintiff did not list the alleged errors on the first page of the brief.  *See* Dkts. 10 at 2; 11 at 1.
23  Though Plaintiff addressed this in her Reply Brief, Dkt. 16 at 1, in the future, counsel shall take care to review
    and comply with the Court's briefing requirements.

ORDER REVERSING DENIAL OF
BENEFITS AND REMANDING FOR AN
AWARD OF BENEFITS - 1

2018, the ALJ issued a decision finding Plaintiff not disabled.  AR 27–37.  In April 2020, this Court reversed the ALJ's decision and remanded for further proceedings.  AR 890–95.  In December 2020, the ALJ issued a second decision, again finding Plaintiff not disabled.  AR 907–23.  In October 2021, this Court reversed the ALJ's second decision and remanded for further proceedings.  AR 1312–24.  In February 2023, the ALJ held a hearing on remand, where medical expert Dr. Stevens testified.  AR 1241–63.  In March 2023, the ALJ issued a third decision, again finding Plaintiff not disabled from her amended alleged onset of December 1, 2014, through her date last insured of December 31, 2016.  AR 1212–40.  In relevant part, the ALJ found Plaintiff has the residual functional capacity (RFC) to perform light work, and sit for four hours, stand for two to three hours, and walk for one to two hours during an eight-hour day.  AR 1222.  The ALJ also restricted Plaintiff from exposure to extreme cold.  *Id.*  Plaintiff now seeks review of the ALJ's March 2023 decision.

## DISCUSSION

The Court may reverse the ALJ's decision only if it is legally erroneous or not supported by substantial evidence of record.  *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020).  The Court must examine the record but cannot reweigh the evidence or substitute its judgment for the ALJ's.  *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).  When evidence is susceptible to more than one interpretation, the Court must uphold the ALJ's interpretation if rational.  *Ford*, 950 F.3d at 1154.  Also, the Court "may not reverse an ALJ's decision on account of an error that is harmless."  *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).

### 1. Medical Opinion Evidence

Under the regulations applicable to this case, an opinion of a treating or examining physician is "entitled to greater weight than the opinion of a nonexamining physician." *Lester v.*

*Chater*, 81 F.3d 821, 830 (9th Cir. 1995) (citations omitted).  If an ALJ rejects the opinion of a treating or examining physician, the ALJ must give clear and convincing reasons for doing so if the opinion is not contradicted by other evidence, and specific and legitimate reasons if it is. *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1988).  A nonexamining physician's opinion may not constitute substantial evidence by itself to justify the rejection of an opinion by an examining or treating physician.  *Lester*, 81 F.3d at 831 (citations omitted).  However, "it may constitute substantial evidence when it is consistent with other independent evidence in the record." *Tonapetyan v. Halter,* 242 F.3d 1144, 1149 (9th Cir. 2001) (*citing Magallanes v. Bowen*, 881 F.2d 747, 752 (9th Cir. 1989)).

### a.    Dr. Bessas

Dr. Bessas, a treating physician of Plaintiff since 2016, completed a questionnaire in February 2019[2] regarding Plaintiff's limitations.  AR 1013–18, 1105–10.  Dr. Bessas indicated Plaintiff has cervical, thoracic, and lumbar degenerative disease, and chronic knee pain.  AR 1013.  Plaintiff challenges the ALJ's rejection of the following findings by Dr. Bessas: that Plaintiff meets the requirements for Listing 11.04B, and that in an eight-hour day, Plaintiff can stand and walk for a maximum of two hours, sit for a maximum of two hours, and must alternate between sitting, standing, and walking, with each activity limited to 15 minutes.  Dkt. 11 at 5–9; AR 1015, 1107.

Listing 11.04B is an impairment described as a "[v]ascular insult to the brain, characterized by…[d]isorganization of motor function in two extremities…resulting in an

---

[2] Dr. Bessas also wrote a letter dated October 2020 describing Plaintiff's pain and treatment regimen.  AR 1204. Plaintiff does not challenge the ALJ's evaluation of this letter, therefore the Court does not address it.  *Carmickle v. Commissioner, Social Sec. Admin.*, 533 F.3d 1155, 1161 n. 2 (9th Cir. 2008) (quoting *Paladin Assocs., Inc. v. Mont. Power Co.*, 328 F.3d 1145, 1164 (9th Cir. 2003)) (noting the Court will not consider matters that are not "'specifically and distinctly'" argued in the plaintiff's opening brief.)

ORDER REVERSING DENIAL OF
BENEFITS AND REMANDING FOR AN
AWARD OF BENEFITS - 3

extreme limitation…in the ability to stand up from a seated position, balance while standing or walking, or use the upper extremities, persisting at least 3 consecutive months after the insult." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 11.04B.  A vascular insult to the brain, "commonly referred to as [a] stroke or cerebrovascular accident (CVA)," is "brain cell death caused by an interruption of blood flow within or leading to the brain, or by a hemorrhage from a ruptured blood vessel or aneurysm in the brain."  20 C.F.R. Pt. 404, Subpt. P, App. 1, § 11.00(I).  In rejecting this part of Dr. Bessas's opinion, the ALJ explained there was no evidence showing vascular insult to the brain, and no physical examinations showing Plaintiff extremely limited in the ability to stand up from a seated position, balance, or use the upper extremities.  AR 1227. The ALJ also relied on the testimony provided by medical expert Dr. Stevens, who stated the record included no significant neurological abnormalities.  AR 1227, 1248, 1250.  An ALJ may reasonably reject a doctor's opinions when they are inconsistent with or contradicted by the medical evidence.  *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004).  Plaintiff argues this Court previously found the ALJ's reasoning improper and the ALJ could not rely on Dr. Stevens's opinion in favor of a treating physician.  Dkt. 11 at 7.  In its 2021 decision, the Court was responding to the ALJ's rejection of Dr. Bessas's proposed standing, walking, and sitting limitations, not the treating physician's opinion regarding whether Plaintiff meets Listing 11.04B.  *See* AR 1317–19.  The record here does not show, and Plaintiff does not present, evidence of a vascular insult to the brain that led to extreme limitations in her ability to stand, balance, walk, and use her upper extremities.  In rejecting this part of the questionnaire, the ALJ did not err.

Next, the ALJ rejected Dr. Bessas's opinion regarding Plaintiff's sitting, standing, and walking limitations because it was inconsistent with objective medical evidence.  AR 1227.  As

ORDER REVERSING DENIAL OF
BENEFITS AND REMANDING FOR AN
AWARD OF BENEFITS - 4

stated, an ALJ may reasonably reject a doctor's opinions when they are inconsistent with or contradicted by the medical evidence. *See Batson*, 359 F.3d at 1195. Here, the ALJ pointed to Plaintiff's "normal neurological findings, normal strength in the upper and lower extremities, normal grip, normal gait, normal reflexes, normal coordination, and normal muscle tone." AR 1227. The ALJ's assessment of the records cited is not entirely accurate. The ALJ cited to a physical evaluation by Dr. Sylwester in October 2016, which does show Plaintiff had normal gait and tandem, and full strength in her upper and lower extremities in all major muscle groups. AR 499. However, the evaluation also shows Plaintiff had limited range of motion in her neck, back, shoulders, and hips, and Plaintiff was tender to palpation over her cervical spine, lumbar spine, and medial joint line of her left knee. AR 499–500. Additionally, the ALJ cited to physical examinations prior to this evaluation, which do show Plaintiff had normal muscle tone. AR 1227. But they also show Plaintiff often had decreased range of motion in her neck, musculoskeletal tenderness or pain on her left shoulder, discomfort over her cervical spine, as well as pain in her knee and hip. AR 334–35, 432–33, 473–74, 479. The Court does not find Dr. Bessas's opinion necessarily undermined by the physical limitations demonstrated by the ALJ's cited records, especially given Dr. Bessas's diagnoses. Therefore, in rejecting Dr. Bessas's opinion about Plaintiff's sitting, standing, and walking limitations for its inconsistency with the record, the ALJ erred.

### b.      Dr. Sylwester

Dr. Sylwester completed a physical evaluation of Plaintiff in October 2016, which the ALJ found partially persuasive. AR 497–501, 1228. Plaintiff challenges the ALJ's rejection of the following limitations proposed by Dr. Sylwester: that Plaintiff's maximum standing and walking capacity is less than two hours, that Plaintiff should not climb or balance, that Plaintiff is

1  unable to reach above waist level with her left arm, and that Plaintiff should not work "around

2  extremes of temperature."   Dkt. 11 at 9–11; AR 500–01, 1228–29.

3         In rejecting Dr. Sylwester's proposed maximum standing and walking limitations and

4  prohibition on climbing and balancing, the ALJ pointed to Plaintiff's "normal neurological

5  findings, normal strength in the upper and lower extremities, normal gait, normal strength,

6  normal coordination, and muscle tone," and cited to the same evidence referenced in rejecting

7  Dr. Bessas's opinion.  AR 1228–29.  As discussed above, though the ALJ's citations include

8  "normal" results, they are also accompanied by other objective findings demonstrating limited

9  range of motion in Plaintiff's neck, back and shoulder, hip and knee pain, and musculoskeletal

10  tenderness.  *See* AR 334–35, 432–33, 473–74, 479, 575.  These findings are not inconsistent with

11  Dr. Sylwester's proposed restrictions, which she based on Plaintiff's "reduced range of motion in

12  her neck and back" as well as radicular findings.  *See* AR 500.  In rejecting this portion of Dr.

13  Sylwester's opinion, the ALJ erred.

14         In rejecting Dr. Sylwester's proposed reaching limitation, the ALJ pointed to Dr.

15  Sylwester's own finding that Plaintiff had "5/5" strength in her upper extremities.  AR 1229,

16  499.  An ALJ may discount a doctor's opinions when they are inconsistent with or unsupported

17  by the doctor's own clinical findings.  *See Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir.

18  2008).  But Dr. Sylwester explained that the reaching limitation was based on Plaintiff's reduced

19  range of motion in her shoulder, a finding Dr. Sylwester noted during the examination.  *See* AR

20  499.  Therefore, the Court cannot say Dr. Sylwester's own findings negated her opinion.  The

21  ALJ also pointed out that medical expert Dr. Stevens found no reason to limit Plaintiff's

22  reaching.  AR 1229.  The ALJ provided the same reasoning in rejecting Dr. Sylwester's

23  prohibition against exposure to extreme temperatures.  *Id*.  But as further discussed below, Dr.

ORDER REVERSING DENIAL OF
BENEFITS AND REMANDING FOR AN
AWARD OF BENEFITS - 6

1   Stevens's testimony was not consistent with the evidence in the record, therefore the ALJ could

2   not reject Dr. Sylwester's opinion in favor of Dr. Stevens's testimony without committing error.

3   *Tonapetyan,* 242 F.3d at 1149 (*citing Magallanes*, 881 F.2d at 752).

4           **c.**      **Dr. Stevens**

5           Medical expert Dr. Stevens testified Plaintiff is able to lift and carry less than 10 pounds

6   continuously and 11 to 20 pounds frequently.  AR 1248.  He opined that in an eight-hour day,

7   Plaintiff can sit for four hours, stand for two to three hours, and walk for one to two hours.  *Id*.

8   Regarding Plaintiff's upper extremities, Dr. Stevens testified Plaintiff had no limitation to

9   reaching overhead or reaching on a level plane.  *Id*.  He testified Plaintiff should not be exposed

10  to extreme cold.  AR 1249.  Dr. Stevens also noted no significant sensory deficits and no

11  significant neurologic deficits in the upper or lower extremities.  AR 1251–52.  When asked

12  about Plaintiff's positive straight leg test[3] with Dr. Sylwester, Dr. Stevens discounted this

13  finding, stating there is "something going on that's not under the control of the examiner"

14  because Dr. Sylwester also observed that Plaintiff also had a "negative straight leg raising."  AR

15  1253.

16          The ALJ gave "significant weight" to Dr. Stevens's opinion because it was "consistent

17  with the evidence," showing "normal neurological findings, normal strength in the upper and

18  lower extremities, normal grip, normal gait, normal reflexes, normal coordination, and normal

19  muscle tone."  AR 1226.  The ALJ cited to the same records used in rejecting Dr. Bessas's

20  proposed sitting, standing, and walking limitations, and Dr. Sylwester's opinion.  *See* AR 1226–

21  27.  As discussed, these treatment notes do show some normal findings, but they simultaneously

22

23  ―――――――――――――――
[3] Dr. Stevens explained that the test is used to determine the presence of sciatica, and that a positive finding means "there can be nerve irritation." AR 1253.

ORDER REVERSING DENIAL OF
BENEFITS AND REMANDING FOR AN
AWARD OF BENEFITS - 7

demonstrate Plaintiff's limited range of motion in her neck, back, shoulders, and hips; tender to palpation over her cervical spine, lumbar spine, and medial joint line of her left knee; musculoskeletal tenderness or pain on her left shoulder; discomfort over her cervical spine; and pain in her knee and hip.  *See* AR 334–35, 432–33, 473–74, 479, 499–500.  The ALJ's citation to a negative straight leg test in support of Dr. Stevens's discounting of Plaintiff's positive straight leg results is also not convincing given the record was from prior to the amended alleged onset date.  *See Carmickle*, 533 F.3d at 1165 ("Medical opinions that predate the alleged onset of disability are of limited relevance."); AR 575.  Overall, Dr. Stevens's testimony was not substantially supported by the records cited by the ALJ.  Therefore, the ALJ could not reject the opinions of Plaintiff's treating and examining physicians in favor of Dr. Stevens's testimony.[4]

## 2.    Plaintiff's Symptom Testimony

Plaintiff testified that in an eight-hour workday, she cannot sit for more than four hours, can stand for less than two hours (with the ability to alternate between sitting and standing), and can lift eight to 11 pounds.[5]  AR 846.  The ALJ rejected Plaintiff's testimony, finding her statements regarding the intensity, persistence, and limiting effects of her symptoms "not entirely consistent with the medical evidence and other evidence in the record."  AR 1223.  Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony."  *Carmickle*, 533 F.3d at 1161 (citing *Johnson v. Shalala,* 60 F.3d 1428, 1434 (9th Cir.1995)).

---

[4] Plaintiff points out that though ALJ found Dr. Steven's testimony persuasive, the ALJ did not include in the RFC the medical expert's opinion about limited exposure to airborne irritants.  Dkt. 11 at 17; AR 1249.  The record does not show Dr. Stevens had any meaningful proposed limitations related to Plaintiff's allergies, therefore the Court rejects this argument.  *See* AR 1248–49.

[5] Plaintiff also asserts the ALJ erred in rejecting her testimony regarding her allergies. Dkt. 11 at 17.  The Court need not address the ALJ's analysis because it concerned a treatment note that is not probative, given it was from July 2020, years after Plaintiff's date last insured, and does not relate back to a condition Plaintiff actually testified to in her most recent hearing.  *See Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003) ("[T]he ALJ is not required to discuss evidence that is neither significant nor probative…").

1   Here, the ALJ pointed to Dr. Stevens's testimony, but this Court has found the testimony

2   unsupported by the record.  The ALJ also found Plaintiff's testimony inconsistent with her post-

3   surgery treatment notes.  AR 1223–25.  The effectiveness of medication and treatment are

4   relevant to the evaluation of a claimant's alleged symptoms.  20 C.F.R. §§ 404.1529(c)(3),

5   416.929(c)(3).  However, the ALJ's interpretation is likewise not substantially supported by the

6   record.  There were instances where Plaintiff's symptoms improved, but findings of decreased

7   range of motion with her neck, musculoskeletal tenderness, and knee and shoulder pain are also

8   found throughout the evidence relied on by the ALJ.  *See* AR 311 (left arm improved, but

9   cervical spine "still TTP" and "discomfort" with left knee), 432 (normal muscle tone, but "TTP"

10  over cervical vertebrae, muscle discomfort with neck, left shoulder pain), 448 (normal

11  musculoskeletal range of motion, but noted tenderness, and mild to moderate "TTP" over

12  cervical/lumbar spine), 461 (normal muscle tone, but also limited neck range of motion "post

13  fusion" and persistent hip and knee pain), 467 (normal neck range of motion and normal muscle

14  tone, but chronic neck pain and musculoskeletal tenderness), 479 (decreased range of motion

15  with neck, chronic left knee pain), 699 (normal neck and musculoskeletal range of motion), 742

16  (normal musculoskeletal range of motion but "mildly decreased neck [range of motion]").  Given

17  that the cited evidence often includes observations of persistent pain, the Court finds the record

18  more so reasonably supports Plaintiff's testimony of pain rather than the ALJ's interpretation of

19  improvement.  Therefore, in rejecting Plaintiff's testimony, the ALJ erred.

20          **3.      Scope of Remand**

21          Plaintiff asks the Court to remand this matter for an award of benefits.  Dkt. 11 at 18.

22  Remand for an award of benefits "is a rare and prophylactic exception to the well-established

23  ordinary remand rule."  *Leon v. Berryhill*, 880 F.3d 1041, 1044 (9th Cir. 2017).  The Ninth

ORDER REVERSING DENIAL OF
BENEFITS AND REMANDING FOR AN
AWARD OF BENEFITS - 9

1  Circuit has established a three-step framework for deciding whether a case may be remanded for

2  an award of benefits. *Id.* at 1045.  First, the Court must determine whether the ALJ has failed to

3  provide legally sufficient reasons for rejecting evidence. *Id.* (citing *Garrison v. Colvin*, 759 F.3d

4  995, 1020 (9th Cir. 2014)).  Second, the Court must determine "whether the record has been fully

5  developed, whether there are outstanding issues that must be resolved before a determination of

6  disability can be made, and whether further administrative proceedings would be useful."

7  *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1101 (9th Cir. 2014) (internal citations

8  and quotation marks omitted).  If the first two steps are satisfied, the Court must determine

9  whether, "if the improperly discredited evidence were credited as true, the ALJ would be

10  required to find the claimant disabled on remand." *Garrison*, 759 F.3d at 1020.  "Even if [the

11  Court] reach[es] the third step and credits [the improperly rejected evidence] as true, it is within

12  the court's discretion either to make a direct award of benefits or to remand for further

13  proceedings." *Leon*, 880 F.3d at 1045 (citing *Treichler*, 773 F.3d at 1101).

14          Plaintiff has met each step of the credit-as-true framework.  First, Plaintiff has established

15  the ALJ erred in rejecting the medical opinions of Dr. Bessas and Dr. Sylwester, as well as her

16  symptom testimony.  Second, the Court cannot say further proceedings would serve a useful

17  purpose as there are no outstanding issues that would benefit from a remand.  The record is

18  complete, the ALJ has had two opportunities to review it after the Court first reversed the ALJ's

19  decision in 2020, and the ALJ's reasons for rejecting the opinions of Dr. Bessas[6] and Dr.

20  Sylwester and Plaintiff's statements have been insufficient.  While the ALJ did provide

21

22

23

---

[6] The Court does not find the issue of whether Plaintiff meets Listing 11.04B an unresolved conflict that would justify remanding for further proceedings. That Plaintiff was not able to meet the requirements here shows she is not disabled based on this specific impairment, but does not necessarily create "serious doubt that [Plaintiff] is, in fact, disabled" on other grounds. *See Garrison*, 759 F.3d at 1021.

ORDER REVERSING DENIAL OF
BENEFITS AND REMANDING FOR AN
AWARD OF BENEFITS - 10

additional reasoning in the decision at issue by pointing to Dr. Stevens's testimony, the ALJ's reliance on it was erroneous given the testimony was not consistent with other evidence in the record.  Third, if Dr. Bessas's and Dr. Sylwester's opinions, and Plaintiff's testimony were credited as true, the evidence requires a finding of disability.  The vocational expert explained an individual with limitations proposed by Dr. Bessas and Dr. Sylwester and testified to by Plaintiff would be precluded from work.  AR 1259–60.  Accordingly, Plaintiff was unable to work and disabled during from her amended alleged onset date of December 1, 2014, through her date last insured of December 31, 2016.

### CONCLUSION

For the foregoing reasons, the Commissioner's final decision is **REVERSED** and this case is **REMANDED** for an award of benefits.

DATED this 1st day of May, 2024.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE